CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

FEB 25 2020

JULIA C. DUDLEY, CLERK
BY: HMcDonead
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| SCOTT MITCHELL OUELLETTE, | ) |
| Plaintiff, | ) Civil Action No. 7:19cv00341 |
| v. | ) MEMORANDUM OPINION |
| JOE MILANESE, et al., | ) By: Hon. Jackson L. Kiser |
| Defendants. | ) Senior United States District Judge |

Plaintiff Scott Mitchell Ouellette, a Virginia inmate proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983, against Corp. Joe Milanese and the Southwest Virginia Regional Jail Authority ("Jail Authority"). Ouellette alleges that he was denied due process concerning a disciplinary conviction and that the Jail Authority violated "numerous" unidentified state and federal laws. Defendants filed a motion to dismiss and this matter is ripe for disposition. Having considered the pleadings, I will grant defendants' motion to dismiss.[1]

I.

On March 30, 2019, Ouellette was charged with institutional infractions for tampering with the fire system and attempting to flood an area after he broke the sprinkler in his cell and flooded the cell and parts of the day room in the Special Housing Unit ("SHU"). Because he had done the same thing multiple times in the preceding six months, he was also charged with a repeated violation-third major offense. The Inmate Offense Reports ("Reports") submitted

---

[1] Ouellette also filed a motion for summary judgment [ECF No. 55] summarily arguing that there is no genuine dispute as to any material fact and, thus, he is entitled to summary judgment "so that plaintiff & defendants may move forward with this case." Finding no basis to grant summary judgment to Ouellette and that his allegations fail to adequately state a cognizable federal claim against the defendants, I will deny his motion.

with Ouellette's amended complaint indicate that Ouellette broke the sprinkler at approximately 8:22 PM on March 29, 2019. Ouellette states that he received the Reports for the disciplinary charges at 9:08 PM on March 30, 2019. The Reports, all signed by Ouellette, acknowledge that Ouellette received a copy of the charges and was advised of his rights for the disciplinary hearing. The Reports also indicate that Ouellette requested to be present at the hearing, to have Cpl. Arney as a staff advisor, and to have inmate Vanover as a witness. The disciplinary hearing was initially scheduled for April 3, 2019, but was ultimately held on the next day, April 4, 2019. At the hearing, Ouellette's requested staff advisor did not attend because he was no long employed at the facility. Ouellette's requested inmate witness testified, correctional officers testified, evidence of the broken sprinkler head was presented, and video footage was reviewed. Defendant Disciplinary Hearing Officer ("DHO") Corp. Milanese found Ouellette guilty of the three offenses charged and imposed a punishment of thirty days in the SHU, loss of all privileges, reclassification to "max housing," a $100 charge for the sprinkler head, and a $50 cleanup fee.[2] Ouellette received a copy of the DHO's report on April 4, 2019, the same day as the hearing.

Ouellette argues that Corp. Milanese violated his due process rights by failing to dismiss the charges against Ouellette when the Reports were served on him twenty-four hours and forty-six minutes after the incident occurred, and because Ouellette did not consent to his

---

[2] I note that Ouellette also states in his complaint that he "lost good time," but the DHO does not list this is a penalty. If he did lose any earned good-conduct time, his claims for damages would be barred under Heck v. Humphrey, 512 U.S. 477, 487 (1994) and Edwards v. Balisok, 520 U.S. 641, 646 (1997). Further, although it is not listed in his prayer for relief, I note that to the extent Ouellette seeks restoration of any earned good-conduct time, his exclusive remedy would be through a petition for writ of habeas corpus. See Preiser v. Rodriguez, 411 U.S. 475, 500 (1973); Wilkinson v. Dotson, 544 U.S. 74, 78-82 (2005) (summarizing the distinctions between § 1983 and habeas actions).

hearing being moved a day later than originally scheduled.[3] Ouellette also argues that Corp. Milanese was not a fair and impartial decision maker because he had an "incentive" to find Ouellette guilty so that he could charge Ouellette $100 for the sprinkler head. Further, Ouellette claims that the Jail Authority violated "numerous" state and federal tax and other laws because uncertified and unlicensed inmates installed sprinkler systems with improper tools and because the sprinklers only cost $4.99 but inmates are charged a $100 fee when they break them. Ouellette seeks $400,000 in compensatory damages, $6,000 in punitive damages, and declaratory and injunctive relief.

## II.

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). In considering a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. Erickson v. Pardus, 551 U.S. 89, 94 (2007). Legal conclusions in the guise of factual allegations, however, are not entitled to a presumption of truth. Ashcroft v. Iqbal, 556 U.S. 662 (2009).

Although a complaint "does not need detailed factual allegations, a plaintiff's obligation

---

[3] Ouellette also summarily alleges that his right to equal protection was denied because other inmates may have had charges dismissed when their charges were untimely served. To establish an equal protection violation, a plaintiff must first demonstrate that he has been "treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination"; once this showing is made, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny. See Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). Ouellette's allegations are far too vague, conclusory, and speculative to demonstrate any of the requisite conditions to a cognizable equal protection claim.

to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations and quotations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level," id., with all the allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor, Chao v. Rivendell Woods, Inc., 415 F.3d 342, 346 (4th Cir. 2005). Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. Consequently, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556). A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully." Id. at 678.

In order to allow for the development of a potentially meritorious claim, federal courts have an obligation to construe pro se pleadings liberally. See, e.g., Boag v. MacDougall, 454 U.S. 364, 365 (1982). Moreover, "[l]iberal construction of the pleadings is particularly appropriate where . . . there is a pro se complaint raising civil rights issues." Smith v. Smith, 589 F.3d 736, 738 (4th Cir. 2009). Nevertheless, "[p]rinciples requiring generous construction of pro se complaints are not . . . without limits." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). "A pro se plaintiff still must allege facts that state a cause of action." Bracey v. Buchanan, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999).

# III.

Ouellette alleges that Corp. Milanese denied him due process at his disciplinary hearing by failing to dismiss the disciplinary charges when they were served on him more than twenty-four hours after the incident and when the disciplinary hearing was delayed by one day, and by not being a fair and impartial decision maker. Ouellette's allegations do not rise to the level of a federal constitutional violation and, therefore, I will grant defendants' motion to dismiss Ouellette's due process claims.

The Due Process Clause of the Fourteenth Amendment prohibits a state from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "To state a procedural due process violation, a plaintiff must (1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of law." Prieto v. Clarke, 780 F.3d 245, 248 (4th Cir. 2015). For purposes of this opinion, I will assume without deciding that the disciplinary proceedings at issue subjected Ouellette to the loss of a protected interest, and that he was, thus, constitutionally entitled to due process.

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). To provide constitutionally sufficient procedural due process, a disciplinary proceeding must provide the following: (1) advance written notice of a claimed violation at least twenty-four hours before any disciplinary hearing; (2) the ability of the prisoner to call witnesses and present documentary evidence at the disciplinary hearing; and (3) a written statement of the evidence relied upon by the factfinder and the reasons for the

disciplinary action taken. See Dilworth v. Adams, 841 F.3d 246, 253 (4th Cir. 2016) (citing Wolff, 418 U.S. at 563-66). To provide constitutionally sufficient substantive due process, a disciplinary offense finding must be "supported by some evidence in the record." Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 454 (1985).

In this case, Ouellette's complaint and attachments demonstrate that he received the required due process. He received notice of the charges against him five days before his hearing, his requested inmate witness testified at the hearing, he does not allege he was denied the opportunity to present documentary evidence, and he was provided a written statement of the evidence relied on by the DHO and the reasons for the disciplinary action taken. Ouellette's arguments that Corp. Milanese should have dismissed the disciplinary charges because they were served on him twenty-four hours and forty-six minutes after the incident and because the hearing was delayed by one day do not implicate any of the constitutionally required procedural protections.[4] See, e.g., Smalls v. Kanode, No. 7:18cv00582, 2019 U.S. Dist. LEXIS 152752, *1, 2019 WL 4254958, at *3 (W.D. Va. Sept. 9, 2019); Stewart v. Smith, No. 95-2752, 1997 U.S. App. LEXIS 22548, at *6, 1997 WL 527747, at *2 (7th Cir. Aug. 22, 1997). It is well established that "a state's failure to abide by its own law as to procedural protections

---

[4] To the extent Ouellette may be alleging that his due process rights were violated because his requested staff representative was not present at his hearing because the staff member was no longer employed at the facility, his claim fails. First, there is no general constitutional right of an inmate to have a staff representative in prison disciplinary hearings. Hudson v. Hedgepeth, 92 F.3d 748, 751 (8th Cir. 1996); Morgan v. Quarterman, 570 F.3d 663, 668 (5th Cir. 2009). Second, due process requires that inmates be provided with the aid of a staff representative only where the inmate is illiterate or "the complexity of the issue[s] make it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case." Wolff v. McDonnell, 418 U.S. 539, 570 (1974); Hedgepath, 92 F.3d at 751. In this case, there is no evidence that Ouellette is illiterate or that the issues were so complex as to require a staff representative.

is not a federal due process issue." Brown v. Angelone, 938 F. Supp. 340, 344 (W.D. Va. 1996) (citing Riccio v. Cty. of Fairfax, 907 F.2d 1459, 1469 (4th Cir. 1990)).

An inmate facing disciplinary charges has the right to an impartial decisionmaker. Wolff, 418 U.S. at 571. Prison hearing officers, however, are not held to the same standard of neutrality as judges in criminal proceedings. Allen v. Cuomo, 100 F.3d 253, 259 (2d Cir. 1996). I must presume that the DHO performed with honesty and integrity, and as such, for me to find him less than impartial, "there must be some substantial countervailing reason to conclude that [he was] actually biased with respect to factual issues being adjudicated." Gwinn v. Awmiller, 354 F.3d 1211, 1220 (10th Cir. 2004)); see Wolff, 418 U.S. at 592. Ouellette's argument that Corp. Milanese was not fair and impartial because he had an "incentive" to find Ouellette guilty so that he could charge Ouellette a fee for the broken sprinkler head is not compelling. Ouellette makes no allegation to support his bald assertion that a fee imposed at a disciplinary hearing is somehow an incentive to a DHO. He does not allege that Corp. Milanese would receive some personal benefit from finding Ouellette guilty. Ouellette's allegations are not sufficiently substantial or specific to overcome the presumption that Corp. Milanese was a fair and impartial decision maker. Accordingly, I will grant defendants' motion to dismiss as to the claims against Corp. Milanese.

## IV.

Ouellette also alleges that the Jail Authority violated "numerous" state and federal laws. "Local governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and

promulgated by that body's officers." Monell v. Dep't of Soc. Servs. of N.Y.C., 436 U.S. 658, 690 (1978). Thus, a governmental entity, such as a jail authority, is liable under § 1983 only when the entity itself is a "moving force" behind the deprivation. Polk Cnty. v. Dodson, 454 U.S. 312, 326 (1981). That is, the entity's official policy or custom must have played a part in the alleged violation of federal law. Oklahoma City v. Tuttle, 471 U.S. 808, 817-18 (1985). Here, Ouellette does not allege that any official policy or custom of the Jail Authority was responsible for the violations or injuries he allegedly suffered, and therefore, Ouellette has failed to state a claim against the Jail Authority. Moreover, he fails to identify any of the "numerous" state or federal laws that the Jail Authority allegedly violated. Accordingly, I will grant defendants' motion to dismiss as to the claims against the Jail Authority.

The clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to Plaintiff and all counsel of record.

ENTERED this 25th day of February, 2020.

*Jackson L. Kiser*
SENIOR UNITED STATES DISTRICT JUDGE